**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **BRADLEY TERWILLINGER,** | § | |
| **BENJAMIN MATCEK, and** | § | |
| **JIMMY DAN SMITH,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CASE NO. 1:16-CV-599-ADA-DTG** |
| | § | |
| **ABELINO "ABEL" REYNA, and** | § | |
| **MANUEL CHAVEZ** | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION REGARDING**
**DEFENDANT ABELINO "ABEL" REYNA'S**
**MOTION FOR SUMMARY JUDGMENT (DKT. NO. 166)**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(d) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Before the Court is the defendant, Abelino "Abel" Reyna's motion for summary judgment. Dkt. No. 166. The motion asserts that absolute immunity and qualified immunity entitle the defendant to summary judgment. The motion is fully brief, including submissions about supplemental authority. Dkt. No. 166, 177, 183, 189, 193, & 199. The Court heard arguments on January 22, 2026. For the reasons that follow, the undersigned **RECOMMENDS** that the defendant's motion be **GRANTED**.

## I.  BACKGROUND

This case arises from a 2015 shootout involving rival motorcycle gangs. On May 17, 2015, a shootout involving the Bandidos and Cossacks motorcycle gangs occurred at the Twin Peaks restaurant in Waco, Texas. *Terwilliger, et al. v. Reyna, et al.¸* 4 F.4th 270, 277 (5th Cir. 2021). Defendant Reyna and other members of the district attorney's office went to the scene while the investigation was ongoing. Dkt. No. 166 at 3; Dkt. No. 166-1, ¶ 2. Over the course of the investigation, Defendant Reyna advocated charging anyone associated with one of the gangs with the crime of engaging in organized criminal activity. Dkt. No. 177 at 2. As a result of that plan, the plaintiffs were charged with and arrested for engaging in organized criminal activity even though Plaintiff Matcek was not at the scene when the fight erupted, only Matcek had a patch, which identified the COC&I not the Bandidos or Cossacks, Terwilliger was not a member of any club, none of them were arrested at the scene, and none of them participated in the violence. *Id*. at 4-5.

The Court previously dismissed the plaintiffs' claims, and the Fifth Circuit reversed part of the dismissal. In 2019, the Court dismissed some of the plaintiffs' claims and allowed others to proceed. Dkt. No. 78. The defendants appealed that decision, and in 2021, the Fifth Circuit Court of Appeals issued an opinion affirming parts of the dismissal and reversing others. Dkt. No. 100; *Terwilliger, et al. v. Reyna, et al.*, 4 F.4th 270 (5th Cir. 2021). That opinion denied the defendants' motion to dismiss based on absolute immunity and held that "[b]ased on the pleadings pertaining to his investigative activity, D.A. Reyna's immunity is limited to that of a law enforcement officer." *Id*. at 281. The opinion also found that the only claim that survived the motion to dismiss was the one based on *Franks* liability. *Id*. at 284-285 (noting that the Court did

not opine on the plaintiffs' ability to succeed on this claim). On remand, the parties completed discovery and Defendant Reyna moved for summary judgment. Dkt. No. 166.

## II.  APPLICABLE LAW

The defendant asserts two independent bases for summary judgment—absolute immunity and qualified immunity. Absolute immunity is a defense available solely to Defendant Reyna, because he was the prosecutor. Qualified immunity is a defense equally available to Defendant Reyna and Defendant Chavez, who raised the defense by a separate motion for summary judgment. *See* Dkt. No. 167 (Defendant Chavez's motion for summary judgment).

To be entitled to summary judgment, Defendant Reyna must demonstrate that "there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). For his claim of absolute immunity, the defendant "bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citations omitted). For the defendant's qualified immunity defense, the summary judgment "burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013); *see also Terwilliger*, 4 F.4th at 280. This requires the plaintiffs to demonstrate that there is a genuine issue of material fact. *Frederick v. LeBlanc*, No. 21-30660, 2023 WL 1432014, at *3 (5th Cir. Feb. 1, 2023) (per curiam) (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 329-30 (5th Cir. 2020); *see Edwards v. Oliver*, 31 F.4th 925, 929 (5th Cir. 2022)). In making this determination, the Court is required to construe all inferences in the plaintiffs' favor. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017). As Defendant Reyna relyies on absolute immunity and qualified immunity, the plaintiffs must demonstrate that there is a genuine fact issue for both defenses.

*Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023) (quoting FED. R. CIV. P. 56(a)). If Defendant

Reyna succeeds on either defense, his motion should be granted.

### A.  The Law Relating to Absolute Immunity

As noted in the previous appeal of this case, absolute immunity protects prosecutors for

conduct involving the judicial phase of a case. *Terwilliger*, 4 F.4th at 280. Absolute immunity

does not, however, protect a prosecutor who is involved in the investigation phase of a case.

*Burns*, 500 U.S. at 486 (citing *Imbler*, 424 U.S. at 430–31). As noted by both parties, courts

follow a functional approach when deciding the application of absolute immunity. *Kalina v.*

*Fletcher*, 522 U.S. 118, 125–26, 129–30 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273

(1993); *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Burns*, 500 U.S. at 486 (collecting cases);

*Terwilliger*, 4 F.4th at 280 (citing *Forrester v. White*, 484 U.S. 219, 229 (1988)). For example, a

prosecutor who endorses certain facts as true or provides advice about an investigation is not

entitled to absolute immunity. *Terwilliger*, 4 F.4th at 280. Eliminating absolute immunity for a

prosecutor engaged in investigative functions puts the prosecutor on equal footing with the

investigating officers who can only rely on qualified immunity. *Burns*, 500 U.S. at 495. Deciding

the application of this defense requires deciding what function Defendant Reyna was performing.

### B.  The Law Relating to Qualified Immunity

The defendant also asserts qualified immunity, which shifts the burden to the plaintiffs.

At the summary judgment stage, the plaintiffs must identify specific facts that overcome the

defense. *Terwilliger*, 4 F.4th at 280 (addressing the requirements at the pleading stage). The

plaintiffs must identify facts that demonstrate two things. A violation of a statutory or

constitutional right, and that the right was clearly established at the time of the violation. *Id*.;

*Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017).  Because the plaintiffs assert a

*Franks* violation, overcoming qualified immunity requires the plaintiffs to prove that the defendant intentionally or recklessly included false statements or omitted material statements from the complaint[1] and that the false or omitted statements were necessary to the finding of probable cause. *Terwilliger*, 4 F.4th at 285. The plaintiffs bear the burden of proving that the false statements or omissions resulted from more than negligence. *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980) (holding that negligent omissions will not support liability under *Franks*).

### III.  ANALYSIS

As Defendant Reyna did not sign the complaints, the Court must look at his conduct that contributed to the complaints. The plaintiffs contend that by inserting himself into the investigation, Defendant Reyna removed himself from absolute immunity. Dkt. No. 177 at 16. They further contend that by establishing the arrest criteria and approving the fill-in-the-blank complaint, Defendant Reyna contributed to the complaint in a way that caused the *Franks* violation. *Id*. at 7. At the hearing, the plaintiffs clarified that they contend Defendant Reyna inserted factual allegations into each complaint by creating the form complaint. Oral Argument on Summary Judgment Motions at 10:47 & 11:33 (Jan. 22, 2026).

The Court rejects the defendant's position that *Pringle* and the unique facts of this case lessened or eliminated the need to find probable cause particularized to each plaintiff. Defendant Reyna argues that *Pringle* raised questions about application of the "particularized probable cause" requirement in complex cases such as this. Dkt. No. 183 at 4-5 (citing *Maryland v.*

---

[1] The charging document has been referred to by the parties and prior opinions as an affidavit or warrant, though it is titled "Complaint." Dkt. No. 177-1 at 4. This opinion refers to the charging document by its title, complaint,

*Pringle*, 540 U.S. 366 (2003) mis-typed as 450 U.S. 366). The defendant contends that *Pringle* changed how probable cause applies in multi-suspect cases. *Id*. at 5.

The Court does not read *Pringle* as eliminating the particularized probable cause requirement in multi-suspect cases. Rather *Pringle* requires evaluating particularized probable cause for each suspect considering the totality of the facts. *Pringle*, 540 U.S. at 371. Under the totality of circumstances in *Pringle*, particularized probable cause was found when a car was stopped at 3:16 a.m. with three occupants who were all in reach of five baggies of cocaine in the rear seat and $763 in the glove box, which indicated a drug dealing enterprise unlikely to involve innocent parties. *Id*. at 373. That situation was distinguished from the totality of the circumstances of *Ybarra* which involved patrons of a tavern who were searched solely because they were present when the police executed a search warrant on the tavern. *Id*. at 372-373 (citing *Ybarra v. Illinois*, 444 U.S. 85 (1979)). The Court therefore analyzes the complaints to evaluate probable cause with particularity as to each plaintiff considering the totality of the circumstances.

Contrary to the plaintiffs' argument, however, the Court finds that probable cause does not require evidence that each plaintiff directly participated in the violence that occurred at Twin Peaks. The plaintiffs contend that a probable cause finding under *Terwilliger* requires the person named in the complaint to have participated in the violence or conspired to participate. Dkt. No. 189 at 2. The parties have disputed whether the *Terwilliger* opinion requires such participation for probable cause to exist. The opinion in a related case clarified that participation in the violence is not required. *Barnhart v. Stroman*, Case No. 24-50751, 2025 WL 2222999 (5th Cir. Aug. 5, 2025). The *Barnhart* court found that the same form complaint could demonstrate probable cause for persons who did not directly participate in the violence because direct participation in violence is not required for Engaging in Organized Criminal Activity under

Texas law. *Id*. at \*3 (noting that the engaging statute is met by nonviolent acts that encourage or even attempt to aid an underlying offense and citing *Otto v. State*, 95 S.W.3d 282 (Tex. Crim. App. 2003)).

### A.  Reyna is Not Entitled to Absolute Immunity

While there is no evidence that Defendant Reyna directly gathered evidence, there is ample evidence that he inserted himself into the investigation. The summary judgment evidence demonstrates that Defendant Reyna went to scene of the shootout, which was unusual. Dkt. No. 166-1 ¶ 1-2; Dkt. No. 177-1 at 260 & 262. Defendant Reyna spoke with investigators at the scene and raised the possibility of arresting everyone. Dkt. No. 177-1 at 260 & 262. He spent roughly six hours at the scene talking with investigators. Dkt. No. 166-1 at 1–3 ¶¶ 2, 6 (Defendant Reyna affirmed that he know of friction between the gangs, law enforcement's reluctance to approve multiple arrests, and a discussion with the police chief where Defendant Reyna stated his belief that there was probable cause for multiple arrests); Dkt. No. 177-1 at 140–48 (32:22–40:2) (Defendant Reyna confirmed that he talked to several law enforcement officers, never interviewed bikers or witnesses, and walked around the scene). After Defendant Reyna arrived at the scene, the focus of the investigation changed from interviewing and releasing people to arresting everyone with a gang affiliation. Dkt. No. 177 at 19-20; Dkt. No. 177-1 at 185–86 (27:21–28:20), 188–190 (35:23–37:19), 220 (14:2-5), 256–58 (21:18-23:24), & 260–61 (25:9–26:4). The plaintiffs have presented substantial evidence that law enforcement personnel opposed Defendant Reyna's suggestion and that it was contrary to what they considered standard investigation practices. Dkt. No. 177 at 20; Dkt. No. 177-1 at 190 (37:3–19), 220 (14:2-5), 256–58 (21:18-23:24), 260–61 (25:9–26:4). The evidence also demonstrates that after Defendant Reyna spoke with Chief Stroman, the investigation changed to making mass

arrests using the form complaint. Dkt. No. 177 at 20-21. Thus, contrary to Defendant Reyna's assertion, there is sufficient evidence to raise a fact question about his involvement in and effect on the course of the investigation.

One thing lacking, however, is proof that Defendant Reyna created or gathered evidence. As noted in *Terwilliger*, the plaintiffs alleged that while at the scene Defendant Reyna gathered evidence such as taking photographs. *Terwilliger*, 4 F.4th at 280. As shown by Defendant Reyna's motion, there is no evidence that Defendant Reyna took photographs, reviewed exculpatory videos or witness statements, or otherwise conducted an investigation. Dkt. No. 166 at 10-12.

Even though Defendant Reyna did not gather or create evidence, the Court finds that his involvement in the investigatory phase deprives him of absolute immunity. As noted by the United States Supreme Court, there is no absolute immunity for a prosecutor who provides legal advice to law enforcement officers in the investigatory phase of the case. *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citing *Imbler*, 424 U.S. at 430–31 (holding that only qualified immunity applied when a prosecutor advised police on how to gather evidence and whether probable cause existed)). While Defendant Reyna did not personally swear to any of the complaints, his early involvement in the investigation and the evidence indicating that he advocated for broad arrest criteria, indicate that Defendant Reyna was heavily involved in the investigatory phase of the case and exercised judgment related to the evidence before any judicial proceedings began. *See Kalina v. Fletcher*, 522 U.S. 118 (1997) (holding that a prosecutor had absolute immunity for preparing and filing two charging documents but not for a certification that the prosecutor signed). This is not a situation where Defendant Reyna simply responded to an inquiry from investigating officers, but instead inserted himself into an investigation, advocated for a course of

conduct and specific charges, and potentially exercised judgment over the truth of evidence. *See Terwilliger*, 4 F.4th at 281. The Court is persuaded that Defendant Reyna's involvement during the investigation and creation of the form complaint—including its factual content— distinguishes the present case from the situation in *Spivey*, where the evidence contradicted a claim that the prosecutor told officers what facts to include in an affidavit. *Spivey v. Robertson*, 197 F.3d 772, 776 (5th Cir. 1999). Under these facts, the Court is persuaded that Defendant Reyna has not proven he is entitled to absolute immunity as a matter of law.

### B.  Reyna is Entitled to Qualified Immunity

The plaintiffs satisfy the first part of the qualified immunity test—an alleged violation of a constitutional right. As noted in *Terwilliger*, the plaintiffs contend that Defendant Reyna violated their Fourth Amendment constitutional right "to be free from arrest without a good faith showing of probable cause." *Terwilliger*, 4 F.4th at 285 (citing *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018)). The Court is persuaded that the plaintiffs have presented sufficient evidence to raise a fact question about whether the complaint demonstrated probable cause as to each of them.

Disputed facts demonstrate that several of the statements in the complaints do not apply to the plaintiffs. The *Terwilliger* opinion found that the complaint stated sufficient probable cause "to arrest those to whom its facts applied." *Terwilliger*, 4 F.4th at 282. In at least these two ways, the facts asserted in the form complaint did not apply to these plaintiffs. First, none of the plaintiffs "were apprehended at the scene" as stated in the complaints. Dkt. No. 177 at 10-11; Dkt. No. 177-1 at 5, 7, & 9 (portions of the complaints alleging that the plaintiffs were apprehended at the scene). Additionally, none of the plaintiffs had "signs or symbols" connecting them to the Cossacks or Bandidos. Dkt. No. 177 at 10; Dkt. No. 177-1 at 5, 7, & 9 (portions of

the complaints alleging that the plaintiffs were apprehended wearing signs or symbols). Only one of the plaintiffs was wearing any sign or symbol and even that was a single patch identifying his membership in the COC&I—but not directly tying him to either the Cossacks or Bandidos. Dkt. No. 177 at 10.

The Court disagrees with the plaintiffs' continued assertion that probable cause also requires some showing that the plaintiffs participated in the violence. The plaintiffs argue in supplemental briefing and at the hearing that mere presence at the shootout and an association with the Cossacks or Bandidos is not sufficient for probable cause to exist. Dkt. No. 199 at 3. *Barnhart* rejected the argument that probable cause required the defendant to brandish a weapon during the incident. *Barnhart*, 2025 WL 2222999, at *3. Instead, the *Barnhart* court confirmed that a violation of the engaging statute could be "met by nonviolent or noncriminal acts, including acts that encourage . . . the commission of the underlying offense." *Id*. (citing *Wilson v. Stroman*, 33 F.4th 202, 206-207 (5th Cir. 2022)). As stated in *Terwilliger*, the complaint stated probable cause for those to whom it applied—apprehended at the scene with an affiliation with the Cossacks or Bandidos—regardless of whether they actively participated in the violence. Thus, the Court needs only to decide whether the false statements about the plaintiffs being apprehended at the scene and wearing identifying signs or symbols resulted from intentional or reckless conduct by Defendant Reyna.

It is the second part of the qualified immunity test where the crux of the parties' dispute over qualified immunity lies. The second part of test requires the plaintiffs to present evidence that the right was clearly established at the time of the alleged violation. *Terwilliger*, 4 F.4th at 284. As the plaintiffs are proceeding on a *Franks* violation, to show that the right was clearly established, they must present evidence showing that Defendant Reyna intentionally or

recklessly included false information in each of their complaints. *Id*. at 283, 285. It is undisputed that Defendant Reyna did not sign any of the complaints. So, he can only be liable if he intentionally or recklessly provided false information for use in the complaints. *Id*. at 284.

The plaintiffs contend that Defendant Reyna intentionally or recklessly provided false material information for the complaints because he established the plan to use a form complaint that was ultimately used to arrest the plaintiffs. As noted above, the plaintiffs contend that the complaint requires the person named to have actually participated in the violence. Dkt. No. 177 at 12. The plaintiffs further contend that Defendant Reyna instructed officers to arrest anyone at the scene who was affiliated with the Bandidos or Cossacks. *Id*. at 12-14. As noted above, the Court does not interpret *Terwilliger*, in light of *Barnhart*, as requiring participation in the violence to demonstrate probable cause. The plaintiffs are unable to defeat qualified immunity based on the argument that the complaint required participation in the violence.

At the hearing on the present motion, the plaintiffs also argued that Defendant Reyna's liability was based on his approval of the form complaint and the sweeping arrests, which would result in arrests of persons without probable cause. Oral Argument on Summary Judgment Motions at 10:47 & 11:33 (Jan. 22, 2026). The plaintiffs failed to identify any specific information that Defendant Reyna contributed to or omitted from the complaint. Rather, they point to substantial evidence showing that Defendant Reyna knew nothing about these specific plaintiffs. Dkt. No. 177 at 12-13. The plaintiffs contend that Defendant Reyna's plan for sweeping arrests based on criteria provided to law enforcement and the form complaint, Defendant Reyna "made false factual assertions about individuals about whom he had no information whatsoever." *Id*. at 15. At the hearing, the plaintiffs clarified that their position was that this plan would so clearly result in false arrests, that Defendant Reyna acted intentionally or

recklessly by allowing the plan to proceed, knowing it would result in arrests without probable cause. Oral Argument on Summary Judgment Motions at 11:41:04 (Jan. 22, 2026).

The undersigned does not agree. As discussed above and as stated by the *Terwilliger* court, the complaint states probable cause for those to whom it applies. *Terwilliger*, 4 F.4th at 282. If law enforcement only arrested persons to whom the facts of the form complaint apply, there could be no *Franks* liability. The plaintiffs have presented no evidence tending to demonstrate that Defendant Reyna knew or should have known that the form complaint would be used to arrest persons to whom it does not apply—like plaintiffs. While the number of people present at the incident might create a concern that some innocent people could be arrested, the Court finds such an assumption unsupported by the evidence and insufficient to show recklessness or intent. The plaintiffs failed to identify any evidence tending to show that Defendant Reyna had serious doubts about whether the form complaint would be properly applied. Dkt. No. 78 at 11; *Terwilliger*, 4 F.4th at 283 n.8; *see also Melton v. Phillips*, 875 F.3d 256, 264 n.7 (5th Cir. 2017) (holding that recklessness requires a signing officer to have serious doubts about facts included in an affidavit); *Hart v. O'Brien*, 124 F.3d 424, 443-444 (5th Cir. 1997). At worst, Defendant Reyna's conduct was negligent, but not reckless. Negligence is insufficient to overcome qualified immunity, and the Court is persuaded that the plaintiffs have failed to meet their summary judgment burden of raising a fact question on qualified immunity.

Since the plaintiffs failed to present evidence that would raise a fact question regarding the intentional or reckless requirement for liability under *Franks*, Defendant Reyna is entitled to summary judgment. For that reason, the undersigned **RECOMMENDS** that Defendant Reyna's motion should be **GRANTED**.

## IV.  CONCLUSION

In summary, the Court finds that absolute immunity does not apply to Defendant Reyna's conduct at issue, but that qualified immunity does. The Court further finds that the plaintiffs have failed to present sufficient evidence to raise a fact question regarding qualified immunity. Under the facts of this case, the Court finds that the plaintiffs have failed to overcome Defendant Reyna's defense of qualified immunity and **RECOMMENDS** that Defendant Reyna's motion for summary judgment be **GRANTED**.

## V.  OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1428–29.

SIGNED this 23rd day of February, 2026.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE